LAW OFFICE OF
# BENJAMIN SILVERMAN
224 WEST 30TH ST., SUITE 302
NEW YORK, NY 10001

TEL (212) 203-8074
FAX (646) 843-3938
Benjamin@bsilvermanlaw.com

March 23, 2020

**By ECF and Email**
Hon. Sanket J. Bulsara
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *United States v. Ivan Eli*, 20 Cr. 50 (RJD)

Your Honor:

I write briefly in response to the government's supplemental letter of this morning, as well as to provide more details on the confirmed COVID-19 case in the Metropolitan Detention Center ("MDC") and Mr. Eli's likely exposure to the virus.

Beginning with the first *confirmed* COVID-19 in the MDC, counsel has been told by the Federal Defenders that the inmate who tested positive arrived at the MDC's intake unit (42) early last week. My client, Ivan Eli, is housed on unit 41, which shares common rooms with unit 42. As a result, the confirmed patient was very likely interacting with inmates in Mr. Eli's unit, and possibly with Mr. Eli himself. According to the Federal Defenders, the infected inmate was "in contact with everyone else in the unit for at least a couple of days."[1]

Given the relatively long incubation period for this virus, it is not frivolous to speculate that it is already spreading within Mr. Eli's unit, and can continue to spread even while inmates are on lockdown. As we have seen in jails around the world, a single infected case is like a match struck in a tinderbox.

As to the government's argument that Mr. Eli poses a danger to the community, Mr. Eli's letter of March 19, 2020 (Dkt. 25) noted the absence of evidence supporting the government's contention that Mr. Eli was an "organizer" of robberies. The government's

---

[1] Counsel learned this information from correspondence with Deirdre Von Dornum and David Patton.

Hon. Sanket J. Bulsara
United States Magistrate Judge
*United States v. Eli*
March 23, 2020
Page 2

sur-reply of this morning (Dkt. 26) notably declines to cite any such evidence. Mr. Eli is not even charged with being physically present at any of the robberies in which he allegedly participated in other roles, for example as a scout.

The government's reliance on the Central District of California's decision in *United States v. Avenatti* is misplaced. First, the *Avenatti* court noted that Mr. Avenatti was not exposed to COVD-19 at the Metropolitan Correctional Center in Manhattan. Here, by contrast, there is already evidence of Mr. Eli's exposure. Second, the *Avenatti* court noted heightened concerns about the MDC – in Brooklyn, where Mr. Eli is housed – that were inapplicable in that case because Mr. Avenatti is housed at the MCC in Manhattan. Third, Mr. Avenatti has already been *convicted* in at least one of his criminal cases last year before the Honorable Paul G. Gardephe. Mr. Eli has not been convicted of any of the charges against him. The *Avenatti* decision is not persuasive authority because it does not address the circumstances here: a medically compromised inmate in pretrial detention on a unit with direct exposure to COVID-19 at the MDC, Brooklyn.

Finally, in recent days the New York City Bar has called for immediate removal of "high risk individuals from incarceration." Ex. A. For the reasons discussed in Mr. Eli's moving brief (Dkt. 20), he is a high-risk individual. Representatives from New York, including Congressman Jerrold Nadler, have called on the Department of Justice to stop "reflexively seeking detention" and to release vulnerable inmates.[2] New York is imposing a stay-at-home policy and Governor Cuomo speculated in a televised news conference yesterday that it could last for up to nine months. The government's submissions do not adequately grapple with this new reality.

Thank you for your consideration of this application.

Respectfully submitted,

 /s/ Benjamin Silverman
Benjamin Silverman
*Attorney for Ivan Eli*

cc: AUSAs Jonathan Siegel and Michael Gibaldi (by ECF)

---

[2] Frank G. Runyeon, *Nadler Calls on DOJ To Free Inmates, Cut Arrests Amid Virus*, Law 360 (Mar. 20, 2020), available at https://www.law360.com/publicpolicy/articles/1255382/nadler-calls-on-doj-to-free-inmates-cut-arrests-amid-virus

# Exhibit A



**FOR IMMEDIATE RELEASE**

Contact: Eric Friedman
efriedman@nycbar.org
212-382-6754

Eli Cohen
ecohen@nycbar.org
212-382-6656

### STATEMENT OF THE NEW YORK CITY BAR ASSOCIATION URGING IMMEDIATE STEPS TO REDUCE PRISON AND JAIL POPULATIONS TO PREVENT SPREAD OF THE COVID-19 VIRUS

New York, March 20, 2020 – The New York City Bar Association ("City Bar") expresses its grave concern that continued incarceration of certain individuals in the New York City metropolitan area in high density local jails and prisons poses a mortal health and safety risk in light of the exponential spread of the COVID-19 virus. New York City houses nearly 10,000 men and women in state, federal, and private jails and prisons.[1] The City has now announced the first confirmed cases in a jail in the city with four correction officers and one incarcerated person testing positive for the virus at Rikers Island. Eight additional people detained in the jail are exhibiting symptoms of COVID-19.[2] The facility's top doctor has warned that a "storm" of additional infection and contagion "is coming" if steps are not taken to drastically reduce the number of people jailed at Rikers Island.[3]

Accordingly, we call on all actors in the criminal justice system to (1) immediately remove all high-risk individuals from incarceration; (2) swiftly move to reduce the density at all New York

---

[1] There were 7,229 individuals in city jails in 2019, (*see* New York State Jail Population 10 Year Trends: 2010-2019, NYS Division of Criminal Justice Services, https://www.criminaljustice.ny.gov/crimnet/ojsa/jail_pop_y.pdf), plus 692 at Metropolitan Correctional Center, (*see* https://www.bop.gov/locations/institutions/nym/index.jsp), plus 1692 at Metropolitan Detention Center, (*see* https://www.bop.gov/locations/institutions/bro/). Capacity at Queens Detention Facility (GEO) is 222, (*see* https://www.geogroup.com/FacilityDetail/FacilityID/73).

[2] Jeffrey Martin, "Shortly After First Rikers Island Prisoner Confirmed With Coronavirus, 8 More Showing Symptoms," Newsweek, March 19, 2020, https://www.newsweek.com/shortly-after-first-rikers-island-prisoner-confirmed-coronavirus-8-more-showing-symptoms-1493351. A medical worker at the Elizabeth Detention Facility, an ICE detention facility in New Jersey, also has tested positive for the coronavirus (*see* Hamed Aleaziz, "A Medical Worker At An ICE Detention Facility For Immigrants Has Tested Positive For the Coronavirus," Buzzfeed, March 19, 2020,https://www.buzzfeednews.com/article/hamedaleaziz/ice-medical-worker-coronavirus).

[3] @RossMacDonaldMD, Twitter, March 18, 2020, 9:51 PM, https://twitter.com/RossMacDonaldMD/status/1240455796946800641.

area jails and prisons to prevent or slow the spread of the virus; (3) refrain from adding additional people to jails and prisons in New York; and (4) ensure that all facilities have plans in place to prevent the spread of the virus and remove stricken individuals to appropriate care facilities.

It is now clear that the COVID-19 virus is spreading at an exponential rate in New York City. The high-density environment of jails and prisons poses a grave threat to both those incarcerated and correctional workers.[4] We join the New York City Board of Correction, the Federal Defenders of New York, the Legal Aid Society, the district attorneys in Brooklyn and Manhattan and other organizations in calling on law enforcement and government to take bold action not only to prevent death among vulnerable populations, but to protect the health of corrections officers, prison administrators, prison health workers, law enforcement, attorneys, judges, court personnel and other essential actors in the corrections and criminal justice systems.

Accordingly, the City Bar asks that individuals over 50 years old or with compromised immune systems or underlying respiratory issues be immediately released, either through administrative means or via immediate, remotely-held bail hearings. Courts should help reduce density in the jails by releasing on bail low-level offenders. The Department of Corrections and Community Supervision ("DOCCS") should heed the call of the Manhattan District Attorney's Office and immediately release all state parole violators charged with "technical" violations. Voluntary surrender dates should be extended so no one is required to report to prison until the crisis has passed. Prosecutors should consent to such releases in all but the most unusual cases.

The City Bar calls on the Bureau of Prisons, DOCCS and the City Department of Correction to administratively release individuals approaching the ends of their terms of incarceration using whatever statutory authority is available. Likewise, any noncitizen who has completed a criminal sentence and is being held solely on immigration charges, or who is detained based solely on immigration violations, should be released from detention. In this respect, New York City, New York State, and the Bureau of Prisons should follow the lead of Los Angeles County and Cuyahoga County (Ohio), which have begun to release people to reduce the risk of a rapid spread of the virus within their jails.

While mindful of the public safety issues raised by such actions, the City Bar believes the risks can be effectively mitigated by the existing systems of supervised release and pretrial supervision available in both state and federal courts. We also believe that the imminent safety risk of allowing large numbers to remain incarcerated in dense conditions is greater than the risk posed by releasing incarcerated individuals wherever possible at this juncture. On a case-by-case basis, individuals should be released subject to home confinement and electronic monitoring that would ensure the safety of the community by reducing the risk of both criminal recidivism and viral transmission.

The City Bar also calls on law enforcement to reduce the number of new arrests and ensure that all arrestees are screened and tested *before* entering the jail population. To protect public safety, Immigration and Customs Enforcement ("ICE") should not make new arrests based solely on

---

[4] *Id. See also* "Former Physician At Rikers Island Exposes Health Risks Of Incarceration," NPR Fresh Air, March 18, 2019, *available at* https://www.npr.org/sections/health-shots/2019/03/18/704424675/former-physician-at-rikers-island-exposes-health-risks-of-incarceration.

2

immigration violations.⁵ We join U.S. Representatives Jerrold Nadler and Karen Bass in being particularly concerned that U.S. Attorneys Offices are continuing "business as usual" in making large-scale arrests, including an 11-defendant case on Wednesday that endangered dozens of defendants, lawyers and court personnel.⁶ All new arrests put law enforcement agents at risk of infection. Individual members of the New York City Police Department have already tested positive, prompting a "sick out" that reduces patrols and thereby jeopardizes public safety.⁷

We call on prosecutors not to authorize large-scale takedowns and on the police to reduce arrests for lower level crimes, as has been done in Philadelphia and Fort Worth and as District Attorney Gonzalez has already promised in Brooklyn.⁸ If it is unsafe for the local jails to accommodate visits from lawyers – as has been the case for several weeks in the federal Metropolitan Correctional Center – it is similarly unsafe for law enforcement to introduce untested individuals into the high-density, unsanitary environment found in these facilities.

Finally, we join the New York City Board of Correction's call for all local facilities to follow San Francisco's lead and publish an action plan for responding to the COVID-19 crisis. Such a plan should include, at a minimum, provisions for health and safety within existing facilities and plans for swiftly evacuating incarcerated individuals who are sick without administrative delays that could prove deadly.

The City Bar is confident that in this time of dire emergency and uncertainty, people of goodwill can come together to protect the entire community, including the vulnerable, marginalized men and women currently housed in New York's jails.

**About the Association**
*The mission of the New York City Bar Association, which was founded in 1870 and has over 24,000 members, is to equip and mobilize a diverse legal profession to practice with excellence, promote reform of the law, and uphold the rule of law and access to justice in support of a fair society and the public interest in our community, our nation, and throughout the world.* [www.nycbar.org/](https://www.nycbar.org/)

---

⁵ In a March 18 letter to ICE, the Department of Homeland Security and U.S. Citizenship and Immigration Services, New York City's top health, social services and immigration officials similarly urged that "ICE should suspend escalations in immigration enforcement and any detention determinations must be made with consideration of the current crisis and the risk of diminishing the willingness of individuals to engage with medical providers and public health authorities." (Letter of file with the New York City Bar Association).

⁶ *See* Frank G. Runyeon, "Dozens Gather In SDNY For Arraignment Despite Virus Fears," Law 360, March 18, 2020, [https://www.law360.com/newyork/articles/1254823/dozens-gather-in-sdny-for-arraignment-despite-virus-fears](https://www.law360.com/newyork/articles/1254823/dozens-gather-in-sdny-for-arraignment-despite-virus-fears).

⁷ *See* "Cops from 1st Precinct Out Sick After Officer Tests Positive for Coronavirus," NY1, March 18, 2020, [https://www.ny1.com/nyc/all-boroughs/news/2020/03/18/nypd-1st-precinct-officer-tests-positive-for-coronavirus](https://www.ny1.com/nyc/all-boroughs/news/2020/03/18/nypd-1st-precinct-officer-tests-positive-for-coronavirus). Currently the NYPD is permitting officers who have come in contact with an individual who has tested positive for COVID-19 to keep working. *See* Tina Moore, Natalie Musumeci, "NYPD tells cops to keep working – even if they encounter coronavirus patients," New York Post, March 18, 2020, [https://nypost.com/2020/03/18/nypd-tells-cops-to-keep-working-even-if-they-encounter-coronavirus-patients/](https://nypost.com/2020/03/18/nypd-tells-cops-to-keep-working-even-if-they-encounter-coronavirus-patients/).

⁸ *See* Greg Norman, "Philadelphia police to reduce low-level arrests in wake of coronavirus outbreak," Fox News, March 19, 2020, [https://www.foxnews.com/us/philadelphia-police-low-level-arrests-coronavirus](https://www.foxnews.com/us/philadelphia-police-low-level-arrests-coronavirus); Bob D'Angelo, "Coronavirus: Fort Worth police will not make arrests for low-level crimes," KIRO 7, March 17, 2020, [https://www.kiro7.com/news/trending/coronavirus-fort-worth-police-will-not-make-arrests-low-level-crimes/IEEWIXWF4NCJNJVGYJQYSTMXSI/](https://www.kiro7.com/news/trending/coronavirus-fort-worth-police-will-not-make-arrests-low-level-crimes/IEEWIXWF4NCJNJVGYJQYSTMXSI/).